UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STANLEY GENE JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:17-cv-00103-SPM ) |
| EDWIN WOLFGRAM, PETER RAVINDRAN, and TRACEY FINTEL, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion for Summary Judgment filed by Defendants Edwin Wolfgram, Peter Ravindran, and Tracey Fintel. (Doc. 100). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 31). The motion is fully briefed and ready for disposition.

**I.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, then the burden shifts to the nonmovant to submit evidentiary materials that "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. An issue of fact is genuine, making summary judgment inappropriate, when "a reasonable jury could return a verdict for the nonmoving party." *Anderson*

1

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal quotations omitted).

## II. FACTUAL BACKGROUND

This case arises out of the commitment of Plaintiff Stanley Johnson ("Plaintiff") to the custody of the Missouri Department of Mental Health ("DMH") after it was determined that he was legally incompetent to stand trial by the Circuit Court of Mississippi County. (Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts ("Pl.'s Resp. to SUMF"), Doc. 115, ¶ 1.) Plaintiff was a patient at the Missouri Psychiatric Center ("MPC") from June 2016 to May 2017. (*Id.* ¶ 2.) At all times relevant to this action, Defendant Edwin Wolfgram was employed by DMH as a psychiatrist at MPC; Defendant Tracy Fintel was employed with DMH at MPC as an inpatient clinical psychologist; and Defendant Peter Ravindran was employed with DMH at MPC as a registered nurse and charge nurse. (*Id.* ¶¶ 3, 5, 6, 7.)

### A. The Commitment to the Metropolitan St. Louis Psychiatric Center

Sometime before June 29, 2015, the state of Missouri charged Plaintiff with stealing and burglary in the Circuit Court of Mississippi County. (Plaintiff's First Amended Complaint ("Pl.'s First Am. Compl."), Doc. 60, ¶ 10.) The Mississippi County Circuit Court subsequently referred Plaintiff for mental health treatment at the MPC and, thereafter, adjudicated him incompetent to stand trial. (*Id.* ¶ 11; Pl.'s Resp. to SUMF, Doc. 115, ¶ 1.) Plaintiff arrived at MPC on or about June 3, 2016 as a pretrial detainee and/or pursuant to an order of involuntary commitment. (Pl.'s Resp. to SUMF, Doc. 115, ¶¶ 1-2.) Upon arrival, Plaintiff met with Defendant Wolfgram for an initial consultation and subsequently received medication and psychiatric treatment from a medical team. (*Id.*) As part of MPC's regular procedure, Plaintiff had a treatment team consisting of

2

Defendant Wolfgram, Defendant Fintel, the charge nurses on Plaintiff's unit, the unit manager on Plaintiff's unit, an administrative liaison who was the Director of Social Work, two social workers, a dietician and a rehabilitation therapist. (*Id.* ¶ 9.)

### B. The Treatment Plan

After reviewing Plaintiff's forensic evaluation, past criminal and psychiatric/behavioral history including medications previously prescribed, an interview with the Mississippi County jailor who had known Plaintiff for at least ten years, and his personal interview with Plaintiff, Defendant Wolfgram diagnosed Plaintiff as suffering from schizoaffective disorder, bipolar type. (*Id.* ¶ 8.) The treatment team develops an overall treatment plan for each patient within seven days of the patient's admission to MPC, and this treatment plan is periodically updated. (*Id.* ¶ 10.) Defendant Wolfgram met with Plaintiff once a week when he first came to MPC and then, starting in July, met with Plaintiff monthly until his transfer. (*Id.* ¶ 11.) Defendant Fintel met with her assigned clients at least once every one to two weeks, and more often if necessary. (*Id.* ¶ 14.)

Defendant Wolfgram initially prescribed risperidone for Plaintiff's psychosis, which was later prescribed in combination with olanzapine. (*Id.* ¶ 16.) Plaintiff testified that he had a personal disagreement with Defendant Wolfgram after refusing to take his medication. (Plaintiff's Statement of Additional Material Facts ("Pl.'s SAMF"), Doc. 115, ¶ 7; Deposition of Stanley Johnson, Jan. 28, 2019 ("Johnson Dep."), 16:14-19, 18:20-19:22.) On June 6, 2016, Plaintiff was forcibly injected with an unknown medication after refusing to take his medication. (Pl.'s SAMF, Doc. 115, ¶ 9; Defendants' Response to Plaintiff's Statement of Additional Material Facts ("Defs.' Resp. to Pl.'s SAMF"), Doc. 128, ¶ 9.)

## C. The Adverse Reaction

On or about August 25, 2016, Defendant Wolfgram prescribed Plaintiff clozapine. (Pl.'s SAMF, Doc. 115, ¶ 28.) Clozapine (also referred to by the brand name Clozaril) is an antipsychotic used to treat schizophrenia, schizoaffective disorder and other psychotic disorders. (*Id.* ¶ 29.) Clozapine poses a higher risk of severe adverse reactions than other antipsychotics, and there is a required ongoing monitoring program for patients taking the medication. (*Id.* ¶¶ 31, 37.) On September 5, 2016, Defendants administered to Plaintiff 100 milligrams of clozapine twice per day. (Affidavit of Philip Youngclaus, Ex. A, Clozapine Administration History for Stanley Johnson, Doc. 103-3, at 1.) On September 7, 2016, Plaintiff became faint and was observed to have low blood pressure before being sent to St. Alexius Hospital with a suspected adverse drug reaction to clozapine. (Pl.'s SAMF, Doc. 115, ¶¶ 44, 51; Defs.' Resp. to Pl.'s SAMF., Doc. 128, ¶ 44.) After the suspected adverse drug reaction, Patrick Boland, a full-time staff pharmacist employed by MPC on September 7, 2016, recommended a plan to "discontinue the Olanzapine order and decrease the Clozapine dose to 200 milligrams total daily divided dose."[1] (Pl.'s SAMF, Doc. 115, ¶ 55, 57.) Defendant Wolfgram continued Plaintiff on the clozapine treatment following the suspected adverse reaction. (*Id.* ¶ 65.) Plaintiff subsequently refused to take clozapine, at which point Defendant Wolfgram discontinued the clozapine treatment. (Pl's Resp. to SUMF, Doc. 115, ¶ 23.) In January of 2017, Defendant Wolfgram again prescribed Plaintiff clozapine. (Pl's Resp. to SUMF, Doc. 115, ¶ 31). Plaintiff remained on clozapine until he was transferred out of MPC to the Southeast Missouri Mental Health Center in June 2017. (Pl's Resp. to SUMF, Doc. 115, ¶ 32.)

---

[1] This is characterized as a "decrease" in clozapine by Mr. Boland, but Plaintiff's First Amended Complaint and the Clozapine Administration History reflect that Plaintiff was taking 100 milligrams of clozapine twice per day on September 5, 2016. (Pl.'s First Am. Compl., Doc. 60, ¶ 45; Clozapine Administration History for Stanley Johnson, Doc. 103-3, at 1.)

In the First Amended Complaint, Plaintiff alleges a single count against Defendants Wolfgram, Ravindran, and Fintel, asserting that Defendants violated Plaintiff's right to adequate medical care as a pretrial detainee and/or as an involuntarily committed individual in a state psychiatric facility, as guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. (Pl.'s First Am. Compl., Doc. 60, ¶ 63.)

**III.    DISCUSSION**

In the instant motion, Defendants argue that summary judgment should be granted as to Plaintiff's claim under 42 U.S.C. § 1983 because Defendants did not violate Plaintiff's constitutional right to adequate medical care as a matter of law.

**A.    Legal Standard for Failure to Provide Adequate Medical Care Under the Fourteenth Amendment**

The parties agree that Plaintiff is an involuntarily-committed mental patient. (Pl.'s Resp. to SUMF, Doc. 115, ¶ 1.) In *Youngberg v. Romeo*, the Supreme Court held that persons who are involuntarily committed to mental institutions are entitled to substantive liberty interests under the Fourteenth Amendment. 457 U.S. 307, 315 (1982). The Eighth Circuit has stated that involuntarily-committed persons should be treated similarly to pretrial detainees, and "[p]retrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).

First, it is important to correctly characterize Plaintiff's claims. Both parties reference an incident where Plaintiff was forcibly injected with an unknown drug on June 6, 2016, and both parties acknowledge that this drug was not clozapine, as clozapine cannot be injected. (Defendants' Reply Brief in Support of Summary Judgment ("Defs.' Reply Br."), Doc. 127, 2; Plaintiff's Surreply to Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary

Judgment ("Pl.'s Surreply"), Doc. 132, 2.) However, Plaintiff's Fourteenth Amendment claim stems from the clozapine treatment that followed this forcible injection, not the forcible administration of the unknown medicine itself. (Pl.'s Surreply, Doc. 132, 2.) Contrary to Defendants' position, the fact that clozapine was never forcibly administered to Plaintiff does not defeat Plaintiff's claim, as the clozapine treatment itself could still violate Plaintiff's Fourteenth Amendment rights without being involuntarily administered. *See Cordell v. Howard*, 879 F. Supp. 2d 145, 155 (D. Mass. 2012) (holding that an inmate plaintiff had sufficiently alleged claims against his doctors where defendants allegedly overdosed the plaintiff with his blood disorder medication, falsified medical records, and refused to provide medical care).

Because "an individual's liberty interest in avoiding forcible administration of psychotropic drugs" is not at issue in this case, the *Morgan v. Rabun* line of cases cited by both parties is inapplicable to Plaintiff's case. 128 F.3d 694, 696 (8th Cir. 1997). Accordingly, the professional judgment standard[2] used by the Eighth Circuit in *Morgan* and by the Supreme Court in *Youngberg v. Romeo* is also inapplicable. The Supreme Court and the Eighth Circuit have observed that the professional judgment standard does "not deal with decisions to administer or withhold medical treatment." *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014) (quoting *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 280 (1990)). Plaintiff's claim against Defendants clearly deals with the decision to administer medical treatment, and Plaintiff does not challenge the constitutionality of the forcible injection he received. (Pl.'s Surreply, 2.) Accordingly, the professional judgment standard does not apply to Plaintiff's claim.

---

[2] The professional judgment standard states that a "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323.

To establish a constitutional violation arising from inadequate medical care, a plaintiff must establish the defendants acted with deliberate indifference to a serious medical need. *Senty-Haugen v. Goodno*, 462 F.3d 876, 890 (8th Cir. 2006). Determination of whether a course of medical treatment constitutes deliberate indifference to a serious medical need requires "a factually-intensive inquiry that proceeds very differently from the analysis under the professional judgment standard." *Scott v. Benson,* 742 F.3d 335, 339 (8th Cir. 2014) (internal citations omitted). This inquiry entails both an objective and subjective analysis. *Id.* A plaintiff must show that (1) he suffered from an "objectively serious medical need", and (2) the defendants "actually knew of but deliberately disregarded [plaintiff's] serious medical need." *Id.*, at 339-40. Under the objective component, "[a] medical need is sufficiently serious if it has been diagnosed by a physician as requiring treatment, unless it is so obvious that even a layperson would easily recognize the need for medical attention." *Laramore v. Thompson*, No. 4:17-CV-01618-JAR, at *2 (E.D. Mo. Sep. 16, 2019) (citing *Ryan v. Armstrong,* 850 F.3d 419, 425 (8th Cir. 2017)). Under the subjective component, a plaintiff "must clear a substantial evidentiary threshold" to show the defendants deliberately disregarded the plaintiff's needs by administering an inadequate treatment. *Meuir v. Greene Cty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007).

In analyzing claims of deliberate indifference, the Eighth Circuit has made clear that there is a difference between medical negligence, which does not violate the Eighth Amendment, and medical treatment so deviated from the applicable standard of care that it evidences a physician's deliberate indifference. *McRaven v. Sanders,* 577 F.3d 974, 982 (8th Cir. 2009) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001) ("Deliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard

of the known risk.") (internal quotations omitted). A recent case from the Eastern District of Missouri summarized the Eighth Circuit's high standard for establishing deliberate indifference to serious medical needs:

> Deliberate indifference is an extremely high standard that requires a mental state "akin to criminal recklessness." *Jackson* [*v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014)] (quoting *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014)). Thus, Plaintiff must show "more than negligence, more even than gross negligence." *Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). He must demonstrate that Defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-41 (8th Cir. 1997).

*Laramore v. Thompson*, No. 4:17-CV-01618 JAR, at *2 (E.D. Mo. Sep. 16, 2019).

A "mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation omitted). In *Duffy v. Davidson*, the plaintiff brought a deliberate indifference claim because he took issue with his doctor's decision to discontinue specific medications and replace them with alternative medication more suited to patients with a history of drug abuse. Civ. 13-4072-KES, 2014 WL 2480602, at *7-8 (D.S.D. Jun. 3, 2014). The court found "that [plaintiff] failed to show that [defendant] acted with deliberate indifference toward his medical needs. At best, [plaintiff] established a disagreement with [defendant's] medical judgment," which was insufficient to state a claim for deliberate indifference. *Id.* In comparison, a prison doctor who refused to provide eyeglasses to a prisoner who was legally blind without them was found to have acted with deliberate indifference. *See Benter v. Peck*, 825 F. Supp. 1411, 1419 (S.D. Iowa 1993). There, the court explained that a licensed optometrist who prescribed glasses and subsequently withheld them in order to compel

payment "was not exercising his professional judgment in making medical decisions when he decided to withhold [plaintiff's] glasses." *Id.* at 1418-19.

B.      **Plaintiff's § 1983 Claim of Deliberate Indifference to a Serious Medical Need**

Pursuant to the factually-intensive inquiry of *Scott v. Benson*, Plaintiff must first demonstrate he suffered from a serious medical need. Defendant Wolfgram diagnosed Plaintiff with schizoaffective disorder, bipolar type, and the parties do not dispute that Plaintiff's mental diagnoses constitute serious medical needs. *See Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016) ("A medical condition is 'objectively serious' if the prisoner was diagnosed by a doctor or it is so obvious that a lay person would recognize the medical need.") (internal quotation omitted).

Next, the Court turns to the subjective prong of the analysis and examines whether Defendants deliberately disregarded Plaintiff's serious medical need. Plaintiff does not dispute that the Defendants provided him with medical treatment. In total, Defendants diagnosed Plaintiff with schizoaffective disorder and bipolar type, provided several different kinds of medication for this medical need, including clozapine, provided a wide range of psychiatric services, including group meetings and individual treatment, transported Plaintiff to the hospital for emergency medical treatment when he became ill, and performed a drug reconciliation after the emergency medical treatment in an attempt to resolve the medical issue. (Pl.'s First Am. Compl., Doc. 60, ¶¶ 17-21, 49; Pl.'s SAMF, Doc. 115, ¶ 56.) Because medical treatment was clearly provided, the issue in this case is whether the treatment in question "so deviate[s] from the applicable standard of care as to evidence a physician's deliberate indifference." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001).

Applying these legal principles to Plaintiff's claim, Plaintiff has not introduced evidence from which a reasonable jury might find that Defendants violated Plaintiff's constitutional rights when treating Plaintiff's medical need. Although there is some case law to suggest that

9

intentionally overdosing an inmate with prescribed medication constitutes deliberate indifference, no reasonable jury could conclude based on Plaintiff's evidence that Defendant Wolfgram acted in a retaliatory manner to intentionally overdose Plaintiff with clozapine. *See Cordell v. Howard*, 879 F. Supp. 2d at 155. In fact, Plaintiff's evidence demonstrates that after the September 7, 2016 emergency hospital visit due to a possible severe adverse drug reaction to clozapine, Patrick Boland, the full-time staff pharmacist at MPC, did not recommend that Plaintiff's clozapine treatment be discontinued during the drug reconciliation. (Pl.'s SAMF, Doc. 115, ¶ 57.) Mr. Boland recommended that olanzapine be discontinued, and the clozapine be decreased to 200 milligrams total daily divided dose, which is the same clozapine dosage Plaintiff was receiving on September 5, 2016. (*Id.*; Pl.'s First Am. Compl., ¶ 45.) Plaintiff has not provided any evidence that the medical treatment provided by Defendants was constitutionally inadequate, and Plaintiff's medical records and Mr. Boland's testimony indicate that Defendants were not deliberately indifferent in prescribing or administering clozapine to Plaintiff, particularly where the evidence shows that Plaintiff resumed taking clozapine without incident from January 2017 to June 2017. *See Meuir v. Greene Cty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (holding that summary judgment was appropriate where the plaintiff "produced neither expert testimony nor documentary evidence to support his claim that the treatment provided by the Jail's medical staff was constitutionally inadequate" and the defendants, "on the other hand, adduced affidavits from a dentist and [one of the doctor-defendants] attesting that the treatment provided by the Jail's medical staff was adequate"); *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.").

Plaintiff argues that Defendants' decision to administer clozapine to him constituted deliberate indifference because the clozapine treatment was "retaliatory, not medically necessary, and was harmful." (Pl.'s Surreply, Doc. 132, 2.) As evidence of this retaliatory treatment, Plaintiff cites his involuntary medication, a verbal argument with Defendant Wolfgram, and Defendant Wolfgram's "defensive" testimony. (Plaintiff's Response to Defendants' Motion for Summary Judgment ("Pl.'s Resp. to MSJ"), Doc. 114, at 9-10.) This evidence does not show that there is a genuine issue for trial that the Defendants acted with deliberate indifference, particularly where other medical professionals confirmed that clozapine was an appropriate course of treatment. (Pl.'s SAMF, Doc. 115, ¶ 57.) Plaintiff has not submitted any evidentiary materials to show that the clozapine treatment was "so inappropriate as to evidence intentional maltreatment," such as expert testimony on the impropriety of clozapine. *See Dulany*, 132 F.3d at 1240–41.

At most, Plaintiff has established a disagreement with the medical judgment of Defendant Wolfgram. Even when viewing the facts in a light most favorable to Plaintiff, there is no evidence to suggest that Defendant Wolfgram intentionally prescribed clozapine to harm Plaintiff in retaliation for refusing to take medication. Inmates, and involuntarily-committed persons by extension, "have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Id.* at 1239.

### C. Qualified Immunity

Defendants argue they are entitled to summary judgment based on qualified immunity. As Plaintiff has not sufficiently stated a § 1983 claim against Defendants, it is unnecessary to rule on the issue of qualified immunity.

## IV. Conclusion

For the reasons stated above,

11

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendants Edwin Wolfgram, Peter Ravindran, and Tracey Fintel (Doc. 100.) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's First Amended Complaint (Doc. 60) is **DISMISSED**, with prejudice.

                                               SHIRLEY PADMORE MENSAH
                                               UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of March, 2020.